UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| DAVID WAYNE BAILEY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 5:16-CV-343-JMH-REW |
| | ) | |
| v. | ) | |
| | ) | RECOMMENDED |
| ARAMARK CORPORATION, et al., | ) | DISPOSITION |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

After dismissing Defendants Aramark Corporation, Ingram, Thompson, and Whelan, DE 41 (Memorandum Opinion & Order), the District Judge referred this matter to the undersigned to conduct further proceedings, including preparation of a Report and Recommendation regarding any dispositive motions. *See* DE 42 (Order). The remaining Defendants[1] moved for summary judgment. DE 58 (Motion). The Court gave *pro se*[2] Plaintiff, David Wayne Bailey, time to respond, but he did not.[3] *See* DE 60 (ordering response by March 7, 2018). The motion stands ripe for review.

---

[1] The remaining Defendants include: Acting Warden Brad Adams; Commissioner Rodney Ballard; Nurse Brenda Beehler; Medical Director Denise Burkett; Deputy Warden Mendalyn Cochran; Ombudsman John Dunn; and Christy Jolly.

Correct Care Solutions, LLC—though not named in the Complaint (DE 1)—was previously listed as a Defendant in this matter. The undersigned ordered the erroneously named Defendant terminated from the docket. DE 60 (Order).

The Court will refer to the remaining Defendants as "Defendants," and will specifically note any intended reference to a dismissed Defendant.

[2] The Court evaluates a complaint by a *pro se* plaintiff under a relatively lenient standard. *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) ("Pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings.").

[3] Failure to respond is not itself grounds for the Court to grant the motion because summary judgment by default is improper. *See Miller v. Shore Fin. Servs., Inc.*, 141 F. App'x 417, 419 (6th Cir. 2005) (*per curiam*); *see also Green v. United States*, No. 11-59-

1

The Court, having considered the full briefing and record, **RECOMMENDS** that the District Court **GRANT** Defendants' motion (DE 58). There is no genuine dispute as to any material fact, and Defendants are entitled to judgment as a matter of law. Bailey fails to put forward sufficient proof regarding the objective and subjective elements of his Eighth Amendment,[4] *see Farmer v. Brennan*, 114 S. Ct. 1970, 1977 (1994), and the state outrage claim fails on multiple levels.

## I.   BACKGROUND[5]

In September 2016, Bailey, then a prisoner,[6] filed a Complaint pursuant to 42 U.S.C. § 1983. DE 1 (Complaint). The suit stems from alleged events during and

---

HRW, 2013 WL 209019, at *2 (E.D. Ky. Jan. 17, 2013). Upon consideration of "the motion and supporting materials," the Court can grant summary judgment if otherwise proper. Fed. R. Civ. P. 56(e)(3). A failure to respond is obviously consequential, though, if the precipitating motion has merit under the summary judgment rubric.

[4] The Complaint also alleged a Fourteenth Amendment equal protection violation. Bailey, however, named only Defendants Aramark and Ingram in this claim. DE 1, at 7. The District Court has already granted the relevant Defendants' motions to dismiss. *See* DE 41, at 8 ("Bailey has . . . failed to adequately plead an equal protection claim . . . and these claims must therefore be dismissed."). Accordingly, the Court limits its analysis to the allegations against the remaining Defendants. The Court notes, however, that Bailey's failure to allege facts indicating disparate treatment in relation to another inmate similarly situated "in all material respects, and that the difference in treatment was without a rational basis" would, for the same reasons Judge Hood cited, foreclose such a claim against the Defendants even if Bailey had named them (or if the Court were to construe the Complaint to include them). DE 41, at 8.

[5] Under the relevant standard, the Court assesses the facts in favor of Bailey, the non-movant. *Matsushita Elec. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986) ("[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.") (citation and internal quotation marks omitted).

[6] Green River Correctional Complex (GRCC, Bailey's post-Northpoint custodian) advised, in December 2017, that Bailey "was released from GRCC on 11/26/17." DE 56 (Letter). "[A] plaintiff's status as a 'prisoner' is to be determined as of the time he brought the lawsuit." *Dixon v. Page*, 291 F.3d 485, 489 (7th Cir. 2002). While release perhaps moots (if not previously mooted, in this matter, by the transfer to GRCC) Bailey's request for an injunction (DE 1, at 9), his demands for unquantified punitive and

conditions of Plaintiff's incarceration at Northpoint Training Center (NTC).[7] Bailey's

factual allegations (stripped of interspersed legal conclusions) generally the filing (and

various appeals) of three administrative grievances at NTC:

*Grievance I*

- May 6, 2016—NTC medical staff, based on a blood test, informs Plaintiff he was at "risk to chronic and accute [sic] reaction to beef and milk[.]" DE 1, at 3.

- May 17, 2016—Bailey submits a medical grievance requesting that kitchen staff be notified of his medical needs. *Id.*

- June 2, 2016—Plaintiff receives notice that his "special diet order" and "diet" were given to kitchen staff. *Id.*

- June 3, 2016—Bailey appeals the June 2 informal resolution to the "Health Care Grievance Committee, because no menu exists which is specifically designed for the plaintiff as ordered." *Id.*

- June 6, 2016—The Healthcare Grievance Committee (including Defendants Beehler and Jolly) notifies Bailey that "the Dietary needs were reported to the kitchen." *Id.*

- June 7, 2016—Plaintiff appeals. He claims the decision was arbitrary because "there was no menu specifically designed for the plaintiff[.]" *Id.* [Plaintiff evidently found the Grievance Committee's decision shocking. *Id.*]

- June 22, 2016—Medical Director Burkett concurs with the committee's findings. DE 1-1, at 26.

*Grievance II*

- June 4, 2016—Plaintiff files a second grievance: "Please instruct Aramark staff at NTC that dairy products contain milk; and dairy is kneaded into bread along with other bakery products, butter and cheese. Advise prison correctional officers working in the kitchen too." *Id.* at 3–4; DE 1-1, at 6 (Grievance Form). Bailey claims he knew the allergens were included in the bread "because they cause me pins & needles in the

---

compensatory damages (DE 1, at 10) remain. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993); *Zeune v. Mohr*, No. 2:14-cv-153, 2015 WL 3544662, at *2 (S.D. Ohio June 4, 2015).

[7] Bailey's First and Second Amended Complaints (DE 6 & 7) added claims regarding Plaintiff's conditions of confinement at GRCC. Because GRCC is located outside of this District, the Court severed the amended pleadings and transferred the new claims to the Western District of Kentucky—the proper venue. DE 9, at 4–5 (Screening Order).

sunlight, and rash or even cists appeared after." DE 1, at 4 (all as in original). [He also alleges resulting pain, suffering, and embarrassment. *Id.*]

- June 24, 2016—Staff informally resolves the grievance: "Aramark staff is following diet requirements per dietitian orders." DE 1-1, at 6. Unsatisfied, Bailey appeals. DE 1, at 4.

- July 7, 2016—The Grievance Committee recommends that kitchen staff "serve inmates with dietary allergens the correct food." DE 1-1, at 7. Bailey appeals to the warden because "they already serve other inmates who have allergies the correct food(s), even specifically designed one for another inmate who was lactose intolerant." DE 1, at 4.

- July 20, 2016—The warden affirms the committee decision. DE 1-1, at 7.

- July 26, 2016—Bailey appeals the warden's decision to Commissioner Ballard. He claims Aramark staff did not order him "the Calcium fortified drink," DE 1, at 4, and, instead, serve him "a calcium saccharin sweetened drink served to all other inmates with no absorbable dietary calcium." DE 1-1, at 9. Plaintiff further claims Aramark "served grievant at breakfast half a peanut butter sandwich until said fortified fruit drink can be ordered[.]" *Id.*

- July 29, 2016—Commissioner Ballard concurs with the underlying decisions: "As stated at all levels of the grievance, Aramark is following all diet requirements per Medical and or dietician orders. There is no evidence to the contrary." DE 1-1, at 10.

*Grievance III*

- July 16, 2016—Bailey, with his third grievance, requests formulation of a special menu by a clinical dietician to account for his dairy and beef allergies. *Id.* at 14. He also renews his request for a calcium fortified drink. *Id.*

- July 25, 2016—NTC staff advise Bailey that a dietician has already formulated a diet for him and that kitchen staff are following said diet. *Id.*

- July 26, 2016—Bailey appeals and requests a hearing because "no menu exists specifically designed for the plaintiff." DE 1, at 5.

- August 4, 2016—The Grievance Committee concurs with the informal resolution and adds that Bailey acknowledged receipt of the requested calcium fortified beverage. *Id.* Bailey claims he "had only received the Drink three times, [because] it was not ordered until after the filing of this [third] grievance." *Id.* He also notes that he "submitted the generic menu that the defendants were not even following as evidence that no menu exists which is specifically designed for [him.]" *Id.*

- August 5, 2016—Bailey unsuccessfully appeals to the Warden. DE 1-1, at 15.

4

- August 12, 2016—Plaintiff appeals to Commissioner Ballard. DE 1, at 6. [However, he also alleges Defendant Dunn never returned an answer.]

- August 19, 2016—Commissioner Ballard concurs with the NTC resolution: "I have reviewed your grievance. As stated at all levels of the grievance, the kitchen is following the diet as written by the dietician for you. The committee confirmed this fact and you admitted you were receiving the meals as the dietician prescribed. Therefore, I concur with the facility on this matter. No further response necessary." DE 58-6, at 6.

Bailey makes numerous disjointed claims throughout the Complaint. As relevant here, he contends that Kentucky Department of Corrections (KDOC) and NTC personnel were deliberately indifferent to his serious medical need for a special diet, prompted by diagnosed allergies to beef and milk. Specifically, he claims Defendants Adams, Ballard, Beehler, Burkett, Cochran, and Jolly acted with deliberate indifference by refusing to reverse other parties' (dismissed Defendants Ingram, DE 1 at ¶ 43, and Thompson) decisions regarding diet implementation. Bailey also claims Defendant Dunn exhibited deliberate indifference by refusing to answer his inmate grievance. *Id.* at 7. Further, Plaintiff argues all the Defendants' conduct (as detailed above): (1) was intentional or reckless, (2) caused Bailey severe emotional distress, and (3) was shockingly extreme and outrageous "because the plaintiff could be subject to accute [sic] reaction possibly even death." *Id.* at 8.[8]

## II.    STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A reviewing court must construe the evidence and draw all reasonable inferences from the

---

[8] Bailey also notes his belief that he "may already suffer irreparable bone loss." The record contains no support for Plaintiff's speculation.

underlying facts in favor of the nonmoving party. *Matsushita Elec. Indus. Co.*, 106 S. Ct. at 1356; *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). Additionally, the court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

The burden of establishing the absence of a genuine dispute of material fact initially rests with the moving party. *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986) (requiring the moving party to set forth "the basis for its motion, and identify[] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate an absence of a genuine issue of material fact"); *Lindsay*, 578 at 414 ("The party moving for summary judgment bears the initial burden of showing that there is no material issue in dispute."). If the moving party meets its burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *Celotex Corp.*, 106. S. Ct. at 2253; *Bass v. Robinson*, 167 F.3d 1041, 1044 (6th Cir. 1999). The Rule "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.* at 106 S. Ct. at 2552.

If the movant bears the burden of persuasion at trial, "that party must support its motion with credible evidence—using any of the materials specified in Rule 56(c)—that would entitle it to a directed verdict if not controverted at trial." *Id.* at 2556 (citation omitted) (Brennan, J., dissenting); *see also Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002) (noting that, when the movant also bears the burden of persuasion at trial, the moving party's initial summary judgment burden is "higher in that it must show that the

record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it") (citation and internal quotation marks omitted). "If the burden of persuasion at trial would be on the *non-moving* party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex Corp.*, 106 S. Ct. at 2557 (Brennan, J., dissenting) (emphasis in original).

A fact is "material" if the underlying substantive law identifies that fact, or the element it concerns, as critical. *Anderson*, 106 S. Ct. at 2510. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 2511; *Matsushita Elec. Indus. Co.*, 106 S. Ct. at 1356 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (citation omitted). Such evidence must be suitable for admission into evidence at trial. *Salt Lick Bancorp. v. FDIC*, 187 F. App'x 428, 444–45 (6th Cir. 2006).

Substantively, in response to a well-supported defense motion in the context of a § 1983 deliberate indifference claim, a plaintiff "'must demonstrate a genuine issue of material fact as to the following two elements: (1) the deprivation of a right secured by

7

the Constitution or laws of the United States and (2) that the deprivation was caused by a person acting under color of state law.'" *Grabow v. Cnty. of Macomb*, 580 F. App'x 300, 307 (6th Cir. 2014) (quoting *Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005)).

An outrage claim, in Kentucky, requires proof of the following elements: "(1) the wrongdoer's conduct must be intentional or reckless; (2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; (3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress must be severe." *Stringer v. Wal–Mart Stores, Inc.*, 151 S.W.3d 781, 788 (Ky. 2004) (citations omitted). A defendant seeking summary judgment may meet its initial burden by demonstrating that the alleged conduct could not reasonably be viewed as "a deviation from all reasonable bounds of decency and [as] utterly intolerable in a civilized community." *Id.* at 791.

As detailed below, Defendants' motion clearly establishes fatal deficiencies regarding material elements of both live claims. The burden thus shifted to Bailey to "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 106 S. Ct. at 2553 (internal quotation marks omitted) (citing Fed. R. Civ. P. 56(e)). Since Bailey did not respond, he necessarily failed to meet his responsive burden. Plaintiff's claims fail as a matter of law, and the Defendants are entitled to summary judgment.

## III.   ANALYSIS

### *Official Capacity & Outrage Claims*

The Court, first, briefly reprises the District Court's analysis to dispense with Bailey's outrage and official capacity claims. Judge Hood's prior analysis resolves the

same issues relative to the Corrections Defendants.

The District Court, addressing the dismissed Defendants' Rule 12 motion, thoroughly summarized the fatal deficiencies in Plaintiff's outrage claim:

> As a threshold matter, IIED is a "gap-filler" claim which is [not] available "where an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed." *Rigazzio v. Archdiocese of Louisville*, 853 S.W.2d 295, 298–99 (Ky. Ct. App. 1993). Where, as here, "[t]he constitutional tort of deliberate indifference and the tort of negligence are available to the plaintiffs in order to recover for [] emotional distress," *Shouse v. Daviess County*, No. 4:06-CV–144–M, 2009 WL 424978, at *9 (W.D. Ky. Feb.19, 2009), an IIED claim is not available and must be dismissed. *See Carter v. Porter*, No. 08–246–JBC, 2008 WL 4911142, at *5 (E.D. Ky. Nov.12, 2008)).
>
> Of course, "[t]he tort of outrage is still a permissible cause of action, despite the availability of more traditional torts, as long as the defendants solely intended to cause extreme emotional distress." *Green v. Floyd Co., Ky.*, 803 F.Supp.2d 652, 655 (E .D. Ky. 2011) (citing *Brewer v. Hillard*, 15 S .W.3d 1, 7–8 (Ky. App. 1999)). But where the plaintiff merely alleges that emotional distress resulted from the defendants' conduct, not that their sole purpose in engaging in that conduct was to inflict that distress, the allegations fall outside this narrow exception and fail to state a viable IIED claim. *Vidal v. Lexington-Fayette Urban Co. Gov't*, No. 5:13-CV117-DCR, 2014 WL 4418113, at *9 (E.D. Ky. Sept. 8, 2014).
> . . . .
>
> Bailey's claim fails to satisfy at least the second and fourth [IIED] elements. Taking Bailey's allegations at face value, the decision by NTC food service staff to rely upon a generic set of guidelines to address food allergies instead of formulating an individualized diet unique to him, even if it could be considered negligent, falls well short of constituting the kind of egregious and intentional misconduct that would offend general standards of basic human decency and morality. *Childers v. Geile*, 367 S.W.3d 576, 582 (Ky. 2012). And Bailey's allegation that he suffers distress from not knowing whether the food he is consuming contains allergens [R. 1 at 7] does not constitute the kind of "serious" or "severe" emotional injury required to state an IIED claim. *Osborne v. Keeney*, 399 S.W.3d 1, 17–18 (Ky. 2012).

DE 41, at 10–12. Bailey's claims against the Defendants rest on their alleged failure to remedy the same conduct that the District Court found insufficient to state a facially valid

9

outrage claim under Kentucky law. Nothing in this record indicates, to the Court, that the Defendants' administrative failure-to-remedy might be problematic when the underlying conduct itself was insufficiently egregious. The outrage claims fail as a matter of law.

Similarly, the District Court's analysis of Plaintiff's official capacity remains apt:

> [T]hese defendants correctly note that any official capacity claims against them must be dismissed as barred by the Eleventh Amendment. An "official capacity" suit against a state employee or official is actually a suit against the state itself. The Eleventh Amendment specifically prohibits federal courts from exercising subject matter jurisdiction over a suit for money damages brought directly against the state, its agencies, and state officials sued in their official capacities. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 687-88 (1993); *Cady v. Arenac Co.*, 574 F.3d 334, 342 (6th Cir. 2009). In addition, states, state agencies, and state officials sued in their official capacities for monetary damages are not considered "persons" within the meaning of 42 U.S.C. § 1983. *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

The Eleventh Amendment bars this Court from exercising jurisdiction over Bailey's claims against the Defendants in their capacity as state officials. Thus, Bailey's official capacity claims, too, fail as a matter of law. The Court now turns to Bailey's Eighth Amendment claim.

### *Deliberate Indifference*

Bailey asserts, under a liberal construction of his Complaint, that Adams, Ballard, Beehler, Burkett, Cochran, and Jolly acted with deliberate indifference to his milk and beef allergies under 42 U.S.C. § 1983[9] in the resolution of his multiple grievances as to diet implementation. Bailey also claims Defendant Dunn was deliberately indifferent when he failed to answer one of Plaintiff's grievance appeals. *Id.* at 7.

---

[9] Section 1983 provides a federal cause of action against state officials for the deprivation of federal constitutional rights under color of state law. The Eighth Amendment prohibits cruel and unusual punishments and is applicable to the states. *Robinson v. California*, 82 S. Ct. 1417, 1420 (1962). As relevant here, the Eighth Amendment obligates the states to "provide humane conditions of confinement[,]" including "ensur[ing] that inmates receive adequate food, clothing, shelter, and medical care[.]" *Farmer*, 114 S. Ct. at 832.

The Sixth Circuit has succinctly stated the contours of the legal framework for

Eighth Amendment conditions of confinement claims, such as Bailey now brings:

> An Eighth Amendment conditions of confinement claim also contains both an objective and a subjective component. . . . The objective component requires the plaintiff to demonstrate that he has been subjected to specific deprivations that are so serious that they deny him the minimal civilized measure of life's necessities. . . . The subjective component requires the plaintiff to demonstrate that the prison officials acted wantonly, with deliberate indifference to the plaintiff's serious needs.

*Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (internal quotation marks and

citations removed); *see also Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010). In the

medical context, "to state a cognizable claim, a prisoner must allege acts or omissions

sufficiently harmful to evidence deliberate indifference to serious medical needs. It is

only such indifference that can offend 'evolving standards of decency' in violation of the

Eighth Amendment." *Estelle v. Gamble*, 97 S. Ct. 285, 292 (1976). Per the cases,

deliberate indifference, in turn, has subjective and objective components. *Perez v.

Oakland Cnty.*, 466 F.3d 416, 423 (6th Cir. 2006).[10] Plaintiff must show both that the

defendants acted with a sufficiently culpable state of mind and that the alleged

wrongdoing was sufficiently objectively harmful to establish a constitutional violation.

*Id.* at 423–24.

Regarding the objective prong, "[i]n cases involving an inmate's medical needs,

the need 'must be, objectively, sufficiently serious.' " *Id.* (citing *Farmer v. Brennan*, 114

S. Ct. 1970 (1994)). "A 'serious' medical need is one that has been diagnosed by a

physician as mandating treatment or one that is so obvious that even a lay person would

---

[10] Case law does not consistently use the same terminology, but the objective component of deliberate indifference substantially dovetails with the sufficiently serious deprivation inquiry. *See, e.g.*, *Napier v. Madison Cnty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001); *Daniels v. Mahone*, No. 1:14-CV-2753, 2015 WL 3619529, at *2-*3 (N.D. Ohio June 8, 2015).

easily recognize the necessity for a doctor's attention." *Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002) (internal citations omitted).

"In considering the subjective component, [the Sixth C]ircuit has emphasized that a plaintiff must produce evidence showing that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Perez*, 466 F.3d at 424; *Rouster*, 749 F.3d at 446 (setting out test). Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 117 S. Ct. 1382, 1391 (1997)); *see also Farmer*, 114 S. Ct. at 1980 (adopting "subjective recklessness" as the test for deliberate indifference);[11] *Wilson v. Seiter*, 111 S. Ct. 2321, 2324 (1991) (The Constitution "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities, are sufficiently grave to form the basis of an Eighth Amendment violation." (internal quotation marks and citations omitted)). "[I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.' " *Estelle*, 97 S. Ct. at 292.

"[T]he subjective intentions of prison authorities must be demonstrated by objective manifestations of such intent, and cannot be proved by factually unsupported, conclusory opinions of the court or of the prisoners or their representatives." *United*

---

[11] For the subjective component of deliberate indifference, the standard of "deliberateness tantamount to an intent to punish" is "not good law." *Warren v. Prison Health Servs., Inc.*, 576 F. App'x 545, 559 (6th Cir. 2014). Instead, as set out above, "deliberate indifference . . . is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 114 S. Ct. at 1978.

12

*States v. Michigan*, 940 F.2d 143, 154 n.7 (6th Cir. 1991). However, "courts may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious[,]" *Warren*, 576 F. App'x at 553 (internal quotation marks omitted) (quoting *Hope v. Pelzer*, 122 S. Ct. 2508, 2514 (2002)), or in other "usual ways, including inference from circumstantial evidence." *Id.* (quoting *Farmer*, 114 S. Ct. at 1981).

First, regarding the claims generally, the Court makes the following observations. Supervisory liability does not lie in § 1983 actions unless Plaintiff shows "that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *see also Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006). "Allegations of supervisory liability by themselves, moreover, will not do the trick. Instead of holding supervisors liable on a theory of vicarious liability, the supervisors must have actively engaged in unconstitutional behavior to be liable under § 1983." *Mitchell v. Hininger*, 553 F. App'x 602, 607 (6th Cir. 2014) (internal quotation marks removed). "[S]imple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 902 (6th Cir. 2003). Further, a "prerequisite of supervisory liability under § 1983 is unconstitutional conduct by a subordinate of the supervisor." *Womack v. Conley*, 595 F. App'x 489, 495 (6th Cir. 2014) (quoting *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006)). Finally, and of particular relevance here, "denial of administrative grievances or the failure to act by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (internal citations and quotation marks omitted). Judge Hood already so held. *See* DE 41, at 14.

13

Bailey's allegations ("refusal of defendants . . . to remedy the wrong after being informed of the violation") fail under the applicable standards. Bailey alleges no food service or medical care incident in which any Defendant actively or directly participated. "A mere failure to act will not suffice to establish supervisory liability." *Essex v. Cnty. of Livingston*, 518 F. App'x 351, 355 (6th Cir. 2013). The closest connection Bailey alleges between his purported harms and any of the Defendants is involvement in the second-stage (or later) review of his grievances (Beehler, Burkett, Jolly, and Ballard). Defendant Cochran's participation was limited to responding to two extraneous Bailey letters. DE 58-7, at 1–3 (Cochran Aff.). Bailey only claims Defendant Dunn, an intermediary, failed to respond to his grievance.[12] [And Dunn swears he has no grievance response role, DE 58-9, at 2 (Dunn Aff.).] Defendant Adams, under oath, avers that he was unaware of any Bailey grievances until being named a Defendant in this matter. DE 58-8 (Adams Aff.). None of the alleged conduct includes personal participation by any of the Defendants in Bailey's medical treatment or meal administration. Further, and foundationally, the District Court has already found no unconstitutional conduct by Aramark, or the individuals specifically charged with Defendant's care / food service. *See supra*; *see also* DE 41 (granting motion to dismiss).

In short, Plaintiff fails to allege the type of involvement necessary to support a § 1983 deliberate indifference claim. Because Bailey makes no direct-action claims against Defendants, and for the reasons stated above, the deliberate indifference claims fail. The Court recommends granting summary judgment on this basis.

---

[12] *See also Grinter*, 532 F.3d at 576 ("To the extent Grinter is alleging that he was denied administrative appeals, he fails to state a claim because an expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." (internal citations and quotation marks omitted))

14

Second, presenting no evidence in response to a well-supported motion, Bailey utterly fails to put forward sufficient proof to survive summary judgment regarding the requisite objective and subjective culpability standards. He does not, with proof adequate under Rule 56 and the applicable legal standards, show that Adams, Ballard, Beehler, Burkett, Cochran, Jolly and/or Dunn "acted wantonly, with deliberate indifference to the plaintiff's serious needs." *Richmond*, 450 F. App'x at 455. Defendants disavow any such intent, and the Court can find nothing in the record (again, Bailey presents no responsive evidence) to suggest that Defendants acted with the requisite bad intent to support a deliberate indifference claim.

Indeed, Bailey himself acknowledges that kitchen staff had a responsive diet, designed by a dietician. *See* DE 1, at 5. Defendants (excepting Dunn and Adams who, as noted above, had at most, a ministerial role in Bailey's grievance process)[13] reviewed Bailey's grievances, directed compliance with the diet, and/or noted that the diet in place accounted for Plaintiff's medical needs. As detailed below, the alleged conduct fully satisfies the applicable Eighth Amendment requirements. The Defendants were not deliberately indifferent.

Prisoners must receive "a proper diet." *Cunningham v. Jones*, 567 F.2d 653, 656 (6th Cir. 1977). Food satisfies this requirement if it "meet[s] nutritional and caloric

---

[13] Even if their roles were as Bailey alleges, the same analysis applicable to the other Defendants would justify granting summary judgment for Dunn and Adams. The record shows that Dunn delivered Bailey's grievance to the appropriate reviewing official. *See* DE 58-6, at 6 (Commissioner's Review). Even if Dunn failed to return the rejected appeal, he conveyed the complaint to the relevant decision-maker. Dunn was not deliberately indifferent. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) ("Evidence that the official acted negligently is insufficient to prove deliberate indifference."). Similarly, even if, as Bailey believes, Adams was acting warden at any relevant time, the claim would fail as a matter of law. The warden's reviews of Bailey's appeals, as with every other reviewer, do not exhibit intentional or reckless disregard of Plaintiff's allergies.

requirements for humans." *Griffis v. Gundy*, 47 F. App'x 327, 328 (6th Cir. 2002). A prison must serve food "under conditions which do not present an immediate danger to the health and well being [sic] of the inmates who consume it." *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985). A "prisoner must show more than mere dissatisfaction with the variety, portion size or savor of his prison diet but must similarly establish symptoms such as health problems or weight loss." *Gambrell v. Weichart*, No. 15-CV-1146-JPS, 2017 WL 1194011, at *3 (E.D. Wis. Mar. 30, 2017) (internal citations and quotation marks omitted).

Plaintiff tested positive—though in the "Equivocal/Low" range, DE 58-2 (Bailey Food Allergen Screening)—for allergies to milk and beef.[14] NTC alerted Bailey of this. NTC responded to the screening by submitting a diet with restrictions for the relevant allergens to kitchen staff. Bailey does not allege, and the record does not show, otherwise. Instead, Plaintiff bases his claims on the Defendants' failure to require, on administrative review, other NTC personnel to implement a Bailey-specific (rather than allergen-specific) diet.[15] In response to Bailey's complaints, the various Defendants either

---

[14] The Court notes that Bailey—beyond conclusory allegations that he has had rashes and cysts, "may" suffer from irreparable bone loss, and "could be subject to" acute reaction or "possibly even death"—offers no medical *evidence* that his allergies constitute an "objectively serious medical condition." *Gayton*, 593 F.3d at 620. Nonetheless, the Court sees a confirmed diagnosis. Accordingly, the Court does not recommend dismissal on this basis, unargued by Defendants.

[15] Notably, Bailey's adoption of this theory casts further doubt on his satisfaction of the objective deliberate indifference element. By narrowing his ignored need allegation to a specific diet, Bailey has shifted the focus of the objective deprivation inquiry. That is, rather than proving that denial of *any* diet for his allergies was a denial of constitutional magnitude, Bailey must show that denial of a Bailey-specific diet was "so serious that [it] den[ied] him the minimal civilized measure of life's necessities." *Richmond*, 450 F. App'x at 455. A tall order, particularly given Bailey's failure to detail or elaborate on the existing or proposed diets.

advised kitchen staff to follow the existing diet, or advised Bailey that the kitchen was, in

fact, complying with the prescribed diet.

Bailey's theory appears to be that Defendants' reliance on the existing diet,

despite his request for a new, particularized diet, is evidence of deliberate indifference.

The Court disagrees. Bailey baldly claims entitlement to an individualized diet and

utterly fails to prove the diet NTC personnel used was improper.

Plaintiff did not submit the allegedly deficient diet and makes only limited,

disjointed allegations:

> Plaintiff . . . is literally fed a lot of bologna not directed by medical menu.
> Seldom ever is a cassarole [sic] replaced with a chicken patty. These are
> often replaced with servings of plain cassarole, [sic] if it could be called
> that, minus the dietary values of sauces and rues. . . . No special meals
> outlined in diet.

DE 1, at 6–7. NTC had an allergy-responsive diet and implemented that in the kitchen.

Bailey in no way justifies a diet tailored only to him. NTC either solved Bailey's grieved

complaints (by ensuring kitchen receipt of and implementation of the diet) or noted that

specific steps (provision of the drink) had already occurred. Not only is there no

substantive violation here, as Judge Hood's dismissal order finds, Defendants also

reacted administratively in a proper and complete manner. For these and all of the stated

reasons, Bailey, who seems to have abandoned his pursuit of this case, faces an adverse

judgment.

### *Summary*

Plaintiff entirely fails to establish that Defendants disregarded his food allergies in

any way, much less that they did so recklessly or intentionally. Defendants were not

deliberately indifferent to a denial of the "minimal civilized measure of life's necessities"

17

by failing to order development of a Bailey-specific diet. *Farmer v. Brennan*, 114 S. Ct. 1970, 1977 (1994). Put differently, the Eighth Amendment does not require prison officials to commission an inmate-specific diet each time a prisoner is diagnosed with an "Equivocal/Low" food allergy (and Bailey presents nothing that indicates it was necessary in the particular circumstances).

The NTC-staff response to Defendant's food allergy diagnosis was wholly appropriate. Defendants met their initial Rule 56 burden. The burden then shifted to Bailey, but he did not respond or present contrary proof. Under Rule 56, Bailey must show the existence of a fact question. *See Harrell v. S. Health Partners*, No. 4:10-CV-P21-M, 2011 WL 9296, at *1 (W.D. Ky. Jan. 3, 2011) ("The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element of its case." (quotation and internal quotation marks omitted)). Bailey's only proof, such as it is, is the pleadings. The Complaint though verified, contains mostly bald conclusions on categorical allegations. Faced with specific contrary proof presented by Defendants, Bailey made no response. Defendants, on the full record, are entitled to judgment as a matter of law.

## IV.    CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the District Court wholly **GRANT** Defendants' motion for summary judgment (DE 58).

\* \* \* \* \*

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. As defined by section 636(b)(1) and Rule 72(b), within fourteen days after being served with a copy of this

decision, any party may serve and file specific written objections to any or all findings or recommendations for *de novo* consideration by the District Court. The parties should consult the aforementioned statute and rule for specific appeal rights and mechanics. Failure to object in accordance with Rule 72(b) normally waives a party's right to review. *See Thomas v. Arn*, 106 S. Ct. 466 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 7th day of May, 2018.

**Signed By:**

**_Robert E. Wier_**

**United States Magistrate Judge**

19